IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION


RICHARD E. DOWNS,                                                                   PLAINTIFF

v.                                                              Civil Action No.: 2:07CV234-P-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                                    DEFENDANT


**MEMORANDUM OPINION**

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Richard E. Downs for a period of disability and disability insurance benefits under Section 216(I) and 223(d) of the Social Security Act. Plaintiff applied for benefits on or about January 30, 2006, alleging that he became disabled on August 3, 1970, due to loss of use of his lower right arm due to a gunshot injury sustained in combat while serving in Vietnam, emphysema and emotional problems. (Tr. 13). The plaintiff's claim was denied initially and on reconsideration. Plaintiff requested an administrative hearing which was held on May 16, 2007. At the hearing, plaintiff and a Vocational Expert (VE) testified. On August 9, 2007, the Administrative Law Judge (ALJ) issued an unfavorable decision. The Appeals Council denied plaintiff's request for review on October 29, 2007. The ALJ's decision is now ripe for review.

FACTS

The plaintiff was born in 1945 and was twenty-five years old at the time he alleged he became disabled. Plaintiff completed the eighth grade in school and later served in the armed

1

forces as a Ranger. (Tr. 24). His past relevant work was as a fabricator for plane parts. (Tr. 16).

On review of the medical evidence, testimony at the hearing and the record in this case, the ALJ determined that the plaintiff suffered from "severe" impairment in that he had "right upper extremity functional loss secondary to gunshot wound sustained in the Vietnam conflict." (Tr. 13). However, the ALJ determined that these impairments did not meet or equal the impairments contained in the listings. (Tr. 14). Regarding the plaintiff's residual functional capacity (RFC), the ALJ determined that through the date last insured the plaintiff retained the RFC to perform sedentary work except he could lift and carry 50 pounds occasionally and 25 pounds frequently with his non-dominant left arm and no weight with the right arm. (Tr. 14). He determined that the plaintiff could never climb ropes, scaffolds or ladders and needed to avoid all exposure to unprotected heights and moving machinery. *Id*. Based on this RFC, the ALJ determined that through the last date insured the plaintiff did not retain the ability to perform his past relevant work, but that there were jobs in the national economy which plaintiff could perform, and he was therefore not disabled. (Tr. 16).

The plaintiff has properly appealed the ALJ's determination and now, on appeal to this court raises the following issues:

1. Whether the ALJ had a legitimate basis upon which to deny disability benefits or if it was merely arbitrary and capricious;

2. Whether the ALJ erred in finding that the plaintiff was capable of performing sedentary work.

Docket 11, p. 1.

## STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that

---

[1] *See* 20 C.F.R. § 404.1520 (2003).

[2] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. § 404.1520(b) (2003).

[4] 20 C.F.R. § 404.1520 (2003).

[5] 20 C.F.R. § 404.1520(d) (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(2003).

[6] 20 C.F.R. § 404.1520(e) (2003).

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

As this case is one for Title II disability benefits only, the plaintiff has "insured status" for a specific period determined by his earnings record. 42 U.S.C. § 423; 20 C.F.R. §§ 404.101, 404.130, 404.131 (2008). Plaintiff must establish that he became disabled before the expiration of his insured status and that he was continuously disabled from the time before expiration of his insured status until the time of his application. *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979). If a claimant becomes disabled after he has lost insured status, his claim must be denied despite his disability. *See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973), *cert. denied*, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978); *Seals v. Gardner*, 356 F.2d 508 (5th Cir. 1966). In this case the plaintiff's insured status expired in 1977. Thus the relevant time period is only from 1970, the date the plaintiff alleges that he became disabled, until 1977, the date his insured status expired.

---

[8]*Muse*, 925 F.2d at 789.

4

Although the plaintiff's health clearly declined as he aged, it is the plaintiff's work capacity during this time period, almost thirty years before the hearing, that is relevant. Any medical evidence dated after that time is not directly relevant except as it might pertain to problems the plaintiff had for years, such as the permanent injury to his arm.

The ALJ concluded that in spite of plaintiff's "severe" impairment of "right upper extremity functional loss secondary to gunshot wound sustained in the Vietnam conflict," (Tr. 13), this impairment did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). He reviewed the medical records as a whole, considered the credibility of the plaintiff's subjective complaints, discussing in detail the plaintiff's symptoms and factors considered in determining credibility, and appropriately reviewed the plaintiff's mental abilities and medical records before determining that the plaintiff's RFC. Based on this RFC and the testimony of a Vocational Expert (VE), the ALJ found that the plaintiff could still perform jobs in the national economy. In so finding, the ALJ determined that the plaintiff was not disabled pursuant to the Act.

## DISCUSSION

<u>Substantial Evidence</u>

Substantial evidence, has been defined by the Fifth Circuit as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)). Conflicts in the evidence are

for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In this case, the ALJ based his RFC determination on the assessment of state agency medical consultant as well as the testimony of the plaintiff. (Tr. 16). In fact, the plaintiff's own testimony is that during the relevant time period he was able to frequently lift 25 to 30 pounds and occasionally 50 to 60 pounds. (Tr. 30). The ALJ adopted the plaintiff's statements into the RFC, demonstrating that he afforded weight to plaintiff's testimony. (Tr. 14). The ALJ considered the plaintiff's subjective complaints of pain and complete functional loss of his right arm, including his daily living activities, level of pain, medication, treatment other than medication, and other factors that would contribute to plaintiff's limitations. (Tr. 14 - 16). The plaintiff successfully met his burden at the first four steps of the evaluation process. *Kraemer v. Sullivan*, 885 F.2d 206, 204 (5th Cir. 1989). Therefore, the burden shifted to the Commissioner to determine if there exists work in the national economy that the plaintiff is able to perform. The ALJ elicited testimony at the hearing from a vocational expert (VE). Using the opinions of the VE and the medical vocational guidelines as a framework, the ALJ determined that there exist jobs in the national economy, such as a surveillance monitor and an usher, which the plaintiff could perform in spite of his impairments. The ALJ's determination was fully supported by the evidence.

The plaintiff argues that the ALJ's decision to deny disability was "arbitrary and capricious" Docket 11, p. 3, because the hypothetical presented to the VE did not include the element of emotional problems or the plaintiff's pain, merely paying "lip service" to the

evidence. Even though the hypothetical posed to the VE clearly did not include the plaintiff's "emotional problems" or pain, this omission was not error: the facts and medical records in evidence simply do not establish that the plaintiff was diagnosed with mental or emotional problems and pain at any time during the relevant time period.

Plaintiff correctly argues that it is not enough for an ALJ to merely list impairments without giving them real consideration, but without documented objective evidence of specific emotional problems and plaintiff's pain, the court cannot find that the ALJ's findings and conclusions were wrong. The plaintiff's own testimony at the hearing makes no significant mention of "emotional problems." (Tr. 26, 38). When directly questioned by the ALJ, "[d]id you have any mental impairments like depression or anything like that?" (Tr. 26) The plaintiff responded, "[w]ell, they've made me go see a psychologist a couple of different times." *Id.* He later expanded his emotional problems when the ALJ asked if he had ever been told he had post-traumatic stress syndrome:

> Q . . . Did they ever tell you you had anything called post-traumatic stress syndrome?
>
> A Yes
>
> Q When did they tell you that?
>
> A A long time ago.
>
> Q Was that in the early seventies?
>
> A Many, many years ago and –
>
> Q And that's why you would wake up thinking about what happened during the night?

7

> A     Right.
>
> Q     If you heard a shotgun or a car exhaust or something like that would that bother you?
>
> A     Yes.
>
> Q     And what would happen if you heard something like that?
>
> A     I'll give you an example. Everybody knows what a jackhammer is. When a jackhammer goes off, it sounds like a 50 caliber machine gun for just a split second and I was driving one time and one – and I was at a light waiting for it to turn green and the jackhammer was off to my left maybe 50 or 60 feet. And when it went off, I ducked down in the seat of my car.

(Tr. 37-38). According to the medical records the plaintiff was seen in February 2006 for psychiatric evaluation. (Tr. 185 - 197). Although he appeared for admission to an inpatient treatment facility, he did not stay due to inability for the facility to accommodate his medical needs. (Tr. 186). In addition, the medical evidence contains records regarding an emergency medical evaluation of plaintiff's mental status (Tr. 554 - 558) in January 2007, when plaintiff was brought in by his wife due to her fears for her safety and the safety of others. Dr. Rebecca Lee Vanzant concluded that the plaintiff had a mood disorder due to his general medical condition. (Tr. 557). However, she also noted that this was due to his adjustment to limitations secondary to failing health and stress related to concern over pending social security disability claim. *Id.* The record also reveals references to plaintiff's treatment for mental problems at the VA in Dallas (Tr. 455), but those medical records were not provided by the plaintiff despite the ALJ's request that they be obtained and his keeping the record open to allow plaintiff's counsel

to submit them. (Tr. 40). Finally, there are several notations in the record where the plaintiff was screened for depression or post-traumatic stress disorder (Tr.334, 360, 375-376, 383, 409, 462). There is also medical evidence pointing to the fact that the plaintiff's emotional problems increased in recent years and perhaps were the result of his severe chronic obstructive pulmonary disease. (Tr. 282). Even with this volume of evidence regarding his mental evaluation and problems, there simply is no objective evidence that any of these problems existed at any time before 1977 – the relevant time period in question.

There is no doubt that plaintiff suffers pain on a regular basis. However, without objective medical evidence to corroborate pain at the level claimed by plaintiff during the specific time period in issue, there is insufficient evidence to support plaintiff's subjective claims. Plaintiff's subjective complaints must be corroborated, at least in part, by objective evidence. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). The record clearly reflects the ALJ's conscious, clear consideration of the evidence as well as his consideration of numerous factors relating to the consideration of plaintiff's subjective complaints. The fact that the ALJ did not find that the plaintiff had pain at the level of severity and with the limitations on his functioning that he claimed is completely within the ALJ's discretion, and this court does not find that this determination was in error. Accordingly, the court finds that the plaintiff's claims of error regarding his subjective evidence of pain and emotional problems must fail.

In all, while plaintiff makes solid arguments regarding the ALJ's decision, the simple fact is that there is no objective evidence in the record to support the plaintiff's claims that he is disabled. The plaintiff's arguments do not point to specifics that the ALJ overlooked or cite to medical evidence or even opinion testimony of medical professionals that would tend to

9

corroborate the plaintiff's claims. It is the duty of this court to review the record on appeal and determine whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Upon review of the record as a whole and the submissions and arguments of the parties, the court finds that the decision of the ALJ was supported by substantial evidence and should be affirmed.

Consideration of Cumulative Effects of Plaintiff's Symptoms

Plaintiff next argues that the ALJ failed to consider all of his symptoms in combination, but rather viewed them separately in finding his impairments do not meet or equal the listings under the Act. According to plaintiff, failure to consider the cumulative effects of all of plaintiff's symptoms warrants reversal of the ALJ's decision. *Davis v. Heckler*, 748 F.2d 293 (5th Cir. 1984), *Scott v. Heckler,* 770 F.2d 482, 487 (5th Cir. 1985), and *Wingo v. Bowen*, 852 F.2d 827 (5th Cir. 1988). The plaintiff contends that his "symptoms . . . clearly equal any one impairment in the Listing of Impairments even though singly each symptom does not meet a listing." Docket 11, p. 7. However, plaintiff fails to point to any specific Listing which his combination of symptoms meets. As defendant notes, the regulations specifically state:

> Medical equivalence must be based on medical findings. We will always base our decision about whether your impairment(s) is medically equal to a listed impairment on medical evidence only. Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1526. The defendant argues that there is no evidence in the record that would show that plaintiff's symptoms and pain, alone or in combination would meet a Listing. In

10

*Owens v. Heckler*, 770 F. 2d 1276, 1282 (5th Cir. 1985), the court held that an ALJ shows his consideration of the combination of impairments when he makes a specific finding that impairments taken in combination would not meet or equal the listings. In this case, the ALJ specifically made this finding: "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1526)." (Tr. 14, Finding No. 4). Further, the ALJ specifically discussed Listing 1.02B entitled "major dysfunction of a joint(s) (due to any cause)" but found that the plaintiff did not meet that Listing because he has an impairment in only one upper extremity, not both, and no impairment in his lower extremities. 20 C.F.R. pt. 404, Subpart P, Appendix 1, §101.02 (2008). In addition, the defendant points out that in order to meet this listing the plaintiff must demonstrate that due to the major dysfunction in both upper extremities, he is unable to perform fine and gross motor movements, rendering him unable to perform tasks such as personal hygiene like shaving, preparation of simple meals or other such activities. 20 C.F.R. pt. 404, Subpart P, App. 1, §101.b2c (2008). The plaintiff's testimony establishes that he was able to perform these and other such gross motor movements during the relevant time. (Tr. 35, 127-132).

In the Fifth Circuit an ALJ must consider the "combination of unrelated impairments 'to see if together they are severe enough to keep the claimant from doing substantial gainful activity.'" *Scott v Heckler*, 770 F.2d at 487 (quoting *Dorsey v. Heckler*, 702 F.2d 597, 605 (5th Cir. 1983)(disavowed on other grounds)). Further, the Circuit held that in accordance with 20 C.F.R. § 404.1522, "the Act seeks to administer relief to the whole man and not simply to serve as a vehicle for the separate clinical analysis of individual ailments." *Id.* To this end, under the

11

regulations controlling the evaluation of disability, the Secretary "can combine unrelated impairments to see if together they are severe enough to keep [the claimant] from doing substantial gainful activity." 20 C.F.R. §§ 404.1522, 416.922.

The plaintiff argues that even if the court finds that the ALJ was correct that the plaintiff does not have any impairment that meets or equals one of the listings, the combination of the plaintiff's noted impairments in conjunction with his other symptoms leaves no doubt that the plaintiff is disabled as defined by the Act. There is ample case law to support reversal and remand of an ALJ's unfavorable decision where the ALJ did not consider the cumulative effects of symptoms and ailments on the plaintiff's ability to work. *See Davis v. Heckler*, 748 F.2d 293 (5th Cir. 1984), *Scott v. Heckler,* 770 F.2d 482, 487 (5th Cir. 1985), and *Wingo v. Bowen*, 852 F.2d 827 (5th Cir. 1988). However, upon review of the record, the ALJ's decision, and taking into account the expiration date of the plaintiff's insured status in 1977, it is clear that the ALJ did consider the plaintiff's symptoms and found that based on the medical evidence and plaintiff's testimony, his symptoms considered singly or in combination did not meet or equal one of the Listings. Although the plaintiff persuasively argues that he is experiencing continued pain and aggravated symptoms as he has aged, the undersigned is limited by the scope of review and the fact that the plaintiff's insured status expired in1977. Accordingly, the court holds that the ALJ's decision was supported by "substantial evidence" as defined by the Fifth Circuit and must be affirmed. *Muse v. Sullivan,* 925 F.2d at 789 (5th Cir. 1991)

## CONCLUSION

For the reasons stated in this memorandum opinion, the court holds that the decision of the ALJ was supported by substantial evidence and must be affirmed. A final judgment will

issue accordingly.

   THIS, the 17th day of March, 2009.

                /s/ W. Allen Pepper, Jr.
                W. ALLEN PEPPER, JR.
                UNITED STATES DISTRICT JUDGE